IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOANNE S. WONG, STEPHEN K.C.S. WONG, INDIVIDUALLY, AND AS GUARDIAN/ CONSERVATOR FOR BRYSON F.K. WONG, A PROTECTED PERSON, | ) ) ) ) ) ) ) | CIVIL NO. 13-00333 JMS-BMK ORDER ADOPTING FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR AN ORDER OF REMAND |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CROSMAN CORPORATION, ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER ADOPTING FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR AN ORDER OF REMAND

## I. INTRODUCTION

On May 3, 2013, Joanne and Stephen Wong (collectively,

"Plaintiffs") filed a Complaint in the Third Circuit Court of the State of Hawaii

against Defendants Ricky Wong Cabalis ("Ricky"), Jaime Wong Cabalis

("Jaime"), Jared Wong Cabalis (collectively, the "Wong Cabalis Defendants");

Crosman Corporation ("Crosman"); and Wal-Mart Stores, Inc.[1] ("Wal-Mart")

---

[1]  Plaintiffs incorrectly named Wal-Mart as Wal-Mart, Hilo, Hawaii in the Complaint.

(collectively, "Defendants").  Plaintiff Stephen Wong is suing in both his

individual capacity and as guardian/conservator for Bryson Wong ("Bryson"),

Plaintiffs' grandson.  The Wong Cabalis Defendants are Bryson's parents and

brother.  By this action, Plaintiffs assert tort claims for damages based on the

accidental firing of an air rifle which left Bryson permanently and totally disabled.

      Crosman removed this action to federal court with Wal-Mart's

consent on the basis of diversity jurisdiction, which would exist "when the [Wong

Cabalis Defendants] are properly realigned [as Plaintiffs]."  Doc. No. 1, Notice of

Removal ¶ 5.  Plaintiffs filed a Motion, which the Wong Cabalis Defendants

joined, seeking a remand to state court and an award of costs and reasonable

attorneys' fees incurred as a result of the removal.  Doc. Nos. 22 & 25.  On

September 12, 2013, Magistrate Judge Barry M. Kurren entered his Findings and

Recommendation ("F&R") that this court remand the action to state court and deny

the request for fees and costs incurred in securing remand.  Doc. No. 31.

      Currently before the court are Crosman's Objections challenging the

F&R's finding that the Wong Cabalis Defendants are properly aligned, thereby

defeating diversity jurisdiction.  Doc. No. 34, Crosman's Objs. at 3.  Based on the

following, the court ADOPTS the F&R.

## II. <u>BACKGROUND</u>

On June 4, 2011, Bryson, then sixteen years old, was shot in the heart by a pellet from an air rifle manufactured by Crosman. Doc. No. 1-1, Compl. ¶ 11. The rifle was "resting on a feed bag, sitting on a table" in the Wong Cabalis Defendants' backyard. *Id.* ¶ 13. The rifle discharged when Bryson either bumped the rifle or the table upon which the rifle lay. *Id.* ¶ 14. As a result of the shooting, Bryson suffered brain damage and is permanently and totally disabled. *Id.* ¶ 12.

Bryson's brother, Jared, bought the rifle from Wal-Mart. *Id.* ¶ 8. At the time of the shooting, Bryson lived with the Wong Cabalis Defendants. *Id.* ¶ 13. Following the shooting, Plaintiff Stephen Wong was appointed as Bryson's guardian/conservator. *Id.* ¶ 2. Plaintiffs and the Wong Cabalis Defendants are citizens of Hawaii. *Id.* ¶¶ 1-5.

Plaintiffs filed the instant action asserting claims for strict liability against Crosman and Wal-Mart, and negligence against Crosman, Wal-Mart, and the Wong Cabalis Defendants. *Id.* at pp. 9-12. Plaintiffs assert that all Defendants are jointly and severally liable. *Id.* ¶ 48.

On September 26, 2013, Crosman filed its Objections, Doc. No. 34, and on October 10, 2013, Plaintiffs filed a Response. Doc. No. 37. On October

18, 2013, Crosman filed a Reply.  Doc. No. 41.  Pursuant to Local Rule 7.2(d), the court determines Crosman's Objections without a hearing.

### III.  <u>STANDARD OF REVIEW</u>

This court has historically treated a motion to remand as a dispositive motion, requiring the issuance of a findings and recommendation by the magistrate judge.  *See Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1029 (D. Haw. 2008). When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirecTV, Inc*., 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own

independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 616 (9th Cir. 1989).

## IV. <u>DISCUSSION</u>

Crosman argues that the F&R: (1) failed to follow *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69 (1941), and Ninth Circuit law requiring the court to realign the Wong Cabalis Defendants as plaintiffs based on a primary purpose analysis; (2) placed too much emphasis on ancillary claims and therefore failed to follow controlling law requiring realignment; and (3) improperly discussed the forum defendant rule, which is irrelevant to the issue of realignment.

### A.    Legal Framework Regarding Realignment of Parties

In general, "[r]emoval requires the consent of all the defendants." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) (citing *Chic., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900)); *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762-63 (9th Cir. 2002). As this court has explained, however, consent of all defendants is not needed if the non-consenting defendants are realigned as plaintiffs. *See Club at Hokulia, Inc. v. Amer. Motorists Ins. Co.*, 2010 WL 4386741, at *3 (D. Haw. Oct. 26, 2010).

Crosman has the burden to prove that the Wong Cabalis Defendants must be realigned as plaintiffs and, therefore, their consent to removal is not necessary -- 28 U.S.C. § 1441 is strictly construed against removal and courts resolve any doubts about the propriety of removal in favor of remanding the case to state court. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

A court must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Chase*, 314 U.S. at 69. Courts "must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'" *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (quoting *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)). That is, "[t]he court should determine [whether there is an actual] 'collision of interest' by reference to the 'principal purpose of the suit.'" *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008) (quoting *Chase*, 314 U.S. at 69-70). The court's "consideration of 'the nature of the controversy' should be limited to the facts and circumstances known at the time the suit was filed." *Id.* at 1236.

Thus, both the Supreme Court and the Ninth Circuit have realigned parties when their interests (1) coincided as to the primary dispute, *see Chase*, 314

6

U.S. at 72-74 & 73 n.3 (determining that the parties' interests were the same regarding the "one fundamental issue," despite the presence of claims on which their interests collided because those claims were not controlling or "really in issue"); *see also Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983) (affirming realignment of a defendant named in her capacity as a trustee, but who stood to benefit personally should the plaintiff prevail against the primary defendant, and where the realigned defendant's interests were identical to those of the plaintiff, she admitted every allegation in the complaint, and pursued only her personal interests in the litigation); and/or (2) "involved substantial legal rights or detriments *flowing from* the resolution of the primary matter in dispute." *Prudential*, 204 F.3d at 874 (emphasis added); *see Sutton v. English*, 246 U.S. 199, 256 (1918) (rejecting realignment because the parties' interests were "altogether adverse" as to the "substantial controversy" regarding the validity of a will and would coincide *only if* the plaintiffs *first* succeeded in having the will annulled) (emphasis added); *see also Continental*, 819 F.2d at 1523 & 1523 n.2 (aligning escape-slide supplier with aircraft manufacturer, despite their dispute over contribution, when the supplier stood to avoid liability for an air disaster if the manufacturer prevailed on claim that "exculpatory clause precluded *all* of Continental's claims arising out of the accident").

7

**B.** **The Wong Cabalis Defendants Are Properly Aligned as Defendants**

In its first two objections, Crosman argues that the F&R failed to follow *Chase* and Ninth Circuit law when it found that realignment was not warranted.

Crosman contends that the primary purpose of this action is adjudication of "Plaintiffs' product liability claim against Crosman and Wal-Mart, with the goal of maximizing Crosman's and Wal-Mart's potential liability for the injuries claimed by both . . . Plaintiffs and the Wong Cabalis Defendants." Doc. No. 34, Def.'s Objs. at 9. Crosman points out that the Wong Cabalis Defendants, in asserting their cross-claim, "readily adopted . . . Plaintiffs' [strict liability] theory in seeking money damages for themselves from Crosman and Wal-Mart." *Id.* Thus, Crosman concludes that because both Plaintiffs and the Wong Cabalis Defendants would benefit if they succeed on their strict liability claims, their interests "are the same," and therefore, the "Wong Cabalis Defendants should be realigned as Plaintiffs." *Id.* Crosman characterizes Plaintiffs' claims against the Wong Cabalis Defendants and both Crosman and Wal-Mart's cross-claims against the Wong Cabalis Defendants as "'ancillary to the essential controversy' -- whether the air rifle at issue . . . was defective." *Id.* at 13-14.

8

Plaintiffs, however, argue that the primary purpose of this action is "to seek recovery of damages for injuries to Bryson arising out of the conduct of all . . . defendants . . . whose conduct was a substantial contributing factor in the . . . shooting and resulting injury to Bryson."  Doc. No. 22-1, Pls.' Mot. at 2.  Put another way, Plaintiffs characterize the primary purpose as a suit "to help Bryson by finding funds that may be used for his benefit, not to make sure that one particular defendant rather than another provides that help."  Doc. No. 37, Pls.' Opp'n at 12.  Plaintiffs further note that both "Crosman and the Wong Cabalis Defendants are apparently insured, so the real object is to get the liability insurance of one or more of all defendants."  *Id.*

As evidenced by these competing characterizations, the primary purpose of an action often lies "in the eyes of the beholder."  *Gibson Guitar Corp. v. Mitsui Sumitomo Ins. of Am.*, 2011 WL 3566408, at *3 (M.D. Tenn. Aug. 15, 2011) (quoting *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 2004 U.S. Dist. LEXIS 8164, at *8 (W.D. Mich. Apr. 30, 2004)).  Nevertheless, upon de novo review, the court concludes that the record and relevant case law support Plaintiffs' characterization.

At its core, this case is about obtaining funds to care for Bryson.  To that end, Plaintiffs assert negligence claims against all Defendants and strict

9

liability claims against Crosman and Wal-Mart, seeking to recover money from as many Defendants as are found liable under independent theories of liability.  *See* Doc. No. 37, Pls.' Opp'n at 17 (arguing that Plaintiffs seek "to recover *from either or both* the Wong Cabalis Defendants and the Crosman/Wal-Mart Defendants"). Although the strict liability and negligence claims are asserted to some extent in the alternative, at this point in the litigation both claims are independently viable and neither can be said to derive from or take precedence over the other -- facts at odds with the caselaw upon which Crosman relies.

For example, unlike *Chase* where the Supreme Court determined that the case involved "only one fundamental issue," and that the additional claims were not controlling or "really in issue," here, there are two claims asserted against various Defendants that are both very much in issue and one does not necessarily control the other.  And in *Continental*, the realigned supplier "had an identical interest in proving the [threshold claim regarding the] validity and scope of [the] exculpatory clause," "filed papers . . . supporting [the manufacturer's motion], and the two parties arranged to be represented by the same counsel."  819 F.2d at 1523. In the instant case, the interests of Plaintiffs and the Wong Cabalis Defendants are not the same, they are not represented by the same counsel, and neither the strict liability nor the negligence claim necessarily flows from the other.

Finally, Crosman's reliance on *Dolch* is misplaced.  Crosman particularly relies on *Dolch's* statement that "[r]ealignment may be required even if a diversity of interest exists on other issues."  702 F.2d at 181 (citing *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 964 & n.6 (5th Cir. 1973)).  But *Eikel*, the case upon which *Dolch's* statement relies, is distinguishable.  In *Eikel*, a lawyer was properly aligned with his ex-partners in a suit to collect a fee from a client even though that lawyer had filed a separate suit against his ex-partners over division of that fee.  473 F.2d at 964 & 964 n.6.  The lawyer's interest in division of the fee necessarily flowed from the action to collect such fee.  By this example, *Dolch* fits squarely within *Prudential's* guidance that realignment is proper where the parties' interests involve "legal rights or detriments *flowing from* the resolution of the primary matter in dispute."  *Prudential*, 204 F.3d at 874.  And, Plaintiffs' strict liability and negligence claims are not dependent upon one another, but are independent claims asserted in the alternative.  Moreover, *Dolch* itself is distinguishable.  Unlike the realigned defendant in *Dolch* who did not oppose the plaintiff's claims, the Wong Cabalis Defendants oppose the negligence claims and deny allegations in the Complaint.  Accordingly, neither *Chase* nor Ninth Circuit law compel realignment of the Wong Cabalis Defendants as plaintiffs.

Similarly, other district courts applying the primary purpose test have declined to realign the parties where the plaintiffs asserted viable, independent, non-derivative claims against defendants.  *See, e.g., Landmark Funding, LLC v. Perrault*, 2011 WL 862751, at *3 (D. Md. Mar. 10, 2011) ("[C]ourts seem consistently to have determined that, where the plaintiff's case includes a substantive cause of action against a defendant, that defendant should not be realigned as a plaintiff notwithstanding the fact that both plaintiff and defendant would benefit from a finding against a second defendant."); *Arnold v. Sphere Drake,* 1993 WL 255140, at *3-4 (E.D. La. June 28, 1993) (rejecting ship "insurer's narrow contention that 'the principal purpose of [the] suit [was] to compel [the insurer] to provide . . . coverage," where plaintiff pled alternative claims against ship insurer and insurance agent); *In re Jackson Nat'l Life Ins.*, 2004 U.S. Dist. LEXIS 8164, at *8 (declining to realign parties in action against insurer and insurance agent, where agent also asserted cross-claim against insurer, and finding that primary purpose, "from the plaintiff's perspective, was broadly 'to be made whole for the injuries sustained by them as a result of [the insurer's] and/or [the agents's] wrongful conduct").

The primary purpose of the instant action is to obtain compensation from Crosman, Wal-Mart, and/or the Wong Cabalis Defendants to compensate

12

Bryson for the injuries he sustained from the accidental shooting.  From Plaintiffs'

perspective, it matters not from which Defendants they are able to collect.  Money

is money.  Nor does it matter that Plaintiffs' and the Wong Cabalis Defendants'

interests coincide with regard to the strict liability claims against Crosman and

Wal-Mart.  *See Sutton*, 246 U.S. at 256 (rejecting realignment where the parties'

interests were adverse at the start of litigation, despite possibility that interests

would coincide upon resolution of some claims); *see also Club at Hokulia, Inc.*,

2010 WL 4386741, at *4 (declining to realign a defendant where "the primary

matter in dispute . . . [is] who is liable . . . and the extent of" each party's liability).

The court recognizes that although the Wong Cabalis Defendants would receive

some benefit from Plaintiffs' successful prosecution of all claims (such that the

funds obtained would help in Bryson's care), the fact remains that Plaintiffs'

negligence claims against the Wong Cabalis Defendants are being vigorously

defended.  The unique aspect of this case -- that the Wong Cabalis Defendants may

benefit from being found liable and triggering the release of funds from their

homeowner's insurance policy -- does not alter their proper alignment as

Defendants.  Accordingly, the Wong Cabalis Defendants are properly aligned

against Plaintiffs.

13

C.      **The Forum Defendant Rule**

Crosman objects to the F&R's discussion of the forum defendant rule, contending that it is irrelevant to a determination of party realignment.  A careful reading of the F&R, however, reveals that a passing reference to the forum defendant rule followed its determination that the parties were properly aligned. Thus, the forum defendant rule was discussed only in connection with the court's conclusion that it lacked jurisdiction based on diversity of the parties.  The forum defendant rule was not a basis for the the F&R's finding that the parties were properly aligned. Accordingly, Crosman's objection is without merit.

## V.  <u>CONCLUSION</u>

Based on the above, the court ADOPTS the Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for an Order

///

///

///

///

///

///

///

14

of Remand.  The Clerk of Court is directed to REMAND this action to the Third

Circuit Court of the State of Hawaii.

      IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, October 23, 2013.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*Wong, et al. v. Crosman Corp., et al.*, Civil No. 13-00333 JMS-BMK, Order Adopting Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for an Order of Remand